Michael E. Piston
Attorney for the Plaintiffs
38-08 Union St., Suite 9A
Flushing, NY 11354
Phone: 646-876-3772
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| AF, Inc., Michigan Corporation, HAROUTIOUN SAHAC BASTAJIAN, BASTAJIAN, CHRIS BASTAJIAN, ANGE BASTAJIAN, KARINA BASTAJIAN, MARIA BASTAJIAN, GIO BASTAJIAN and ALINA NOVIKOVA BASTAJIAN | Case No.: 2:23-cv-13009-JEL-CI |
| Plaintiffs, | FIRST AMENDED COMPLAINT |
| against | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES | |
| Defendant | |

## INTRODUCTION

1. The plaintiffs have brought this action to hold unlawful and set

   aside the United States Citizenship and Immigration Services'

COMPL

Decision of September 26, 2023, to deny Haroutioun

Bastajian's Form I-140, Petition for Immigrant Worker, ECF

No. 2 at 6, on the grounds that the  Decision was arbitrary and

capricious, inasmuch as it informally imposed   requirements

not previously made a part of its regulations, ran counter to

the evidence before the agency, and/or failed to  articulate a

satisfactory explanation for its action, including a rational

connection between the facts found and the choice made.

2.   Further, the plaintiffs have brought this action to hold

unlawful and set aside the United States Citizenship and

Immigration Services' Decisions of October 30, 2023, to deny

Haroutioun Bastajian and his wife and children's applications

for adjustment of status in the United States, ECF No. 3,

(Form I-485) on the grounds that inasmuch as these denials

were premised solely upon the denial of Haroutioun Bastajian's

Form I-140, they were likewise  arbitrary and capricious.

## THE PARTIES

3. AF, Inc. is a Michigan corporation which has been, and intends

to be, when Haroutioun Bastajian becomes a permanent

resident, his employer in the United States, and on that basis

has entered into large scale agreements to provide Mr.

Bastajian's services to at least two mosques, which it cannot

complete if Mr. Bastajian is not granted U.S. permanent

residency.

4. AF, Inc. resides in Dearborn Heights, Michigan.

5. Haroutioun Bastajian , a citizen and national of Lebanon, is

one of the leading decorators of mosques in Lebanon, ECF No.

4 at 27, as well as one of the leading professionals of a field

unique to the Islamic World - the use of Arabic calligraphy  to

decorate religious buildings. Id. at 28.

6. HAROUTIOUN SAHAC BASTAJIAN, and ALINA NOVIKOVA

BASTAJIAN, CHRIS BASTAJIAN, ANGE BASTAJIAN, GIO

BASTAJIAN, KARINA BASTAJIAN, MARIA BASTAJIAN,

Mr. Bastajian's wife and children, respectively, are all citizens

and nationals of Lebanon, except ALINA NOVIKOVA

BASTAJIAN, who is a citizen and national of Russia.

7. HAROUTIOUN SAHAC BASTAJIAN, CHRIS BASTAJIAN,

ANGE BASTAJIAN, GIO BASTAJIAN, KARINA BASTAJIAN,

MARIA BASTAJIAN and ALINA NOVIKOVA BASTAJIAN are the derivative beneficiaries of Mr. Bastajian's Form I-140.

8. The United States Citizenship and Immigration Services (USCIS) is an agency within the Department of Homeland Security to whom the Secretary of Homeland Security has delegated authority to adjudicate petitions for immigrant workers and applications for adjustment of status. It resides in the state of Maryland and the District of Columbia.

## JURISDICTION

9. This being an action arising under the Administrative Procedure Act, a law of the United States, original jurisdiction over this matter is conferred upon this Court by 28 U.S.C. § 1331.

## VENUE

10.  Inasmuch as  AF, Inc. is a resident of the Eastern District of Michigan, venue is proper in this district. 28 U.S.C. § 1391(e)(1)(C)[1].

---

[1] No real property is involved in this action.

COMPLAINT - 4

STATEMENT OF RELEVANT FACTS

11. On April 18, 2022, Haroutioun Bastajian filed a Form I-140 with the USCIS to be classified as an employment-based immigrant in accordance with 8 U.S.C. § 1153(b)(1)(A) because he was an "alien with extraordinary ability". ECF No. 2 at 1.

12. 8 C.F.R. § 204.5(h)(2) defines "extraordinary ability" as: A level of expertise indicating that the individual is one of that small percentage who has risen to the very top of the field of endeavor.

13. Further, 8 C.F.R. § 204.5(h)(3) indicates that an individual can establish sustained national or international acclaim through evidence of a one-time achievement (that is, a major, internationally recognized award).

14. Barring the individual's receipt of such an award, the regulation outlines ten criteria, at least three of which must be satisfied for an individual to establish the sustained acclaim necessary to qualify as an individual of extraordinary ability. These criteria are:

COMPLAINT - 5

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or

showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

COMPLAINT - 6

15.    Additionally, 8 C.F.R. § 204.5(h)(4) provides that "[i]f the above standards do not readily apply to the beneficiary's[2] occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility."

16.    If and only if the USCIS determines that the beneficiary has met three of these criteria, does it go on to determine whether he has been the beneficiary of sustained national or international acclaim, is among the small percentage who have risen to the very top of his field and whether he is coming to the United States to work in this field.

17.    If the beneficiary meets 3 of the criteria set forth in § 204.5(h)(3), plus all of the criteria set forth in the immediately preceding paragraph, then his petition shall be approved. 8 U.S.C. § 1154(b).

18.    Mr. Bastajian submitted to the USCIS the following published material about himself in major media, relating to

---

[2] Mr. Bastajian, in addition to being the petitioner in his Form I-140, is also the beneficiary.

COMPLAINT - 7

his work as a mosque decorator, as evidence that he met the criterion in § 204.5(h)(iii):

a.  Interview of Haroutioun Bastajian by Rania Barghout on October 18, 2015, in the MBC (Middle East Broadcasting Center) network, for the TV show "Talk of the Town". Her written by-line appeared in the broadcast. ECF No. 4 at 2, 16-19.

b.  Evidence that MBC is the leading free-to-air, pan-Arab, news and entertainment channel. Satellite transmission first started from London in September 1991, making MBC the first-ever, independent Arabic satellite TV station and a market leader, delivering news and quality, family entertainment programming to more than 130 million Arabic speaking people around the world. ECF No. 4 at 20-21.

19.  Mr. Bastajian submitted to the USCIS the following evidence of the display of his work in the field at artistic exhibitions to show that he met the criterion in § 204.5(h)(vii):

COMPLAINT - 8

a. A letter from the Arab American National Museum confirming that "AANM currently displays a piece of artwork created and donated by Mr. Bastajian in the main courtyard of our museum." ECF No. 4 at 22.[3]

20.   Mr. Bastajian submitted to the USCIS the following evidence that he has performed in a leading or critical role for organizations or establishments that have a distinguished reputation to show that he met the criterion in § 204.5(h)(viii):

a. A letter from the Islamic Center of America (ICofA) showing that it is a distinguished organization for which Mr. Bastajian has played a critical role. ECF No. 4 at 23-25.

---

[3] The Arab American National Museum is the first museum in the world devoted to Arab American history and culture. The Museum brings to light the shared experiences of immigrants and ethnic groups, paying tribute to the diversity of our nation." "Smithsonian Affiliations" https://web.archive.org/web/20110929003611/http://affiliations.si.edu/AffiliateDetail.Asp?Affi liateID=197. Quoted in ECF No. 4 at 3.

COMPLAINT - 9

**b.** A newspaper article showing that ICofA is the largest mosque in America.[4] ECF No. 4 at 26.

**c.** The letter from the ICofA explained how Mr. Bastajian had played a critical role for the organization as follows:

> The Islamic Center of America is one of North America's oldest institutions. It has been serving the needs of Muslims in the greater Detroit area and throughout the United States. The Islamic Center of America has a long and rich history that embodies the Muslim American Community's search, struggle and triumph to find a place to belong. The story began in 1949, when Imam Mohammad .Jawad Chirri, a religious scholar who could not speak or understand English came to America at the request of a small group of people who were yearning for Islamic guidance. That humble beginning culminated into a Center that has become more than a place of worship but an Institution and a beacon for Islam in North America.

> The Islamic Center of America traces its rich history back to the 1950s. The Muslim community in the Dearborn- Detroit area was growing like other small communities that came to the United States in search of a better life.

> It was then that a committed group of young Lebanese-Americans worked to establish Michigan's first Shia mosque. Imam Chirri was invited to lead the newly-formed Islamic Center Foundation Society which evolved into the Islamic Center of Detroit (ICD) in 1963. The Detroit mosque was

---

[4] Greg Kruppa, "Archbishop Meets With Muslim Leaders At Dearborn Mosque", Detroit News, March 20, 2009 https://pluralism.org/news/archbishop-meets-muslim-leaders-dearborn-mosgue (last accessed 04/03/2022).

largely financed by devoted Shia Muslims, some of whom pledged their homes and businesses as collateral, to support the building of the mosque. The ICD broke ground in November 1962. A year later, the mosque, which only had a prayer room, lecture hall, kitchen, and an open office space. Over the years, it soon became evident that the ICofA building located on Joy Road and Greenfield in Detroit did not meet the needs of the burgeoning Muslim community. In 2005, the current Center was inaugurated and became known as Islamic Center of America. The ICofA's 120, 000 sq. ft. facility is the largest mosque in North America and the oldest Shia mosque in the United States.

The ICofA accommodates a large and magnificent meeting hall, industrial kitchen, a spacious prayer room, meeting rooms, and a library. Glazed bricks were used to veneer two decorative domes at the main entrance and the round mosque at the center of the building. Additionally, two 110-foot towers (minarets) were erected to add to the architectural layout.

The ICofA is renowned for its wide range of religious, educational, and public programs. It has long been recognized as one of Dearborn's most vibrant and influential Muslim entities. The CofA continues to be a pillar of cultural understanding of the pious religion of Islam.

Because of its long history, large size and location in Dearborn Michigan, the very heart of the American Shia community, there is no doubt that the ICofA is the most distinguished Shia mosque in America, to which all other Shia mosques and religious centers in the United States automatically look for guidance and leadership.

Unfortunately, after its initial completion, the mosque, particularly its dome, was largely bare. Inscriptions from the

COMPLAINT - 11

Qur'an usually adorn the interiors and exteriors of mosques, establishing a strong link between scripture and the place of prayer. Although mosque decoration almost never includes human or animal forms. which are seen as potentially idolatrous, geometric, floral, vegetal, and calligraphic designs normally adorn mosques, symbolically recalling the promise of Paradise. However, given the large expense of the building of the mosque, it seemed like the heavy (and often quite expensive) task of decoration would have to be delayed indefinitely.

This is why the ICofA leadership was (pleasantly) surprised and amazed when Harout Bastajian, already widely recognized as one of the leading practitioners of religious decorative art in the Islamic World, volunteered to decorate the ICofA's mosque without compensation. This great undertaking, spanning several months, turned our new Mosque from a mere piece of architecture into a living breathing monument to God. Religious worshipers and visitors from all over the world, when they come to the Islamic Center, are able to gain inspiration from the verses of the Qu'ran and elaborate religious decoration which burst upon them from all directions.

Harout Bastajian certainly has played a critical role for the ICofA because without him it might have taken years to raise the funds to decorate the mosque, and even had the funds been raised, there were few in the world - and none in North America -who could have done at any price the amazing job which he did out of the goodness of his heart.

ECF No. 4 at 23-25

21.   On January 13, 2023, USCIS sent Mr. Bastajian a request

for additional evidence. ECF No. 5 at 8-12.

COMPLAINT - 12

22.   Mr. Bastajian responded to this request with a letter dated

June 2, 2023, together with supporting evidence. ECF No. 5 at

1-7, 13-50.

23.   This evidence included:

a) The following published material about Mr. Bastajian in

major media, relating to  his work as a mosque decorator, as

evidence that he met the criterion in § 204.5(h)(3)(iii):

   i)    An Arabic language transcript and certified  English

language translation of an interview of Haroutioun

Bastajian by Rania Barghout on October  18, 2015, in

the Middle East Broadcasting Center,  for the  TV

show "Talk  of the  Town".  ECF No. 5 at 22-27.

b) The following evidence  of the display of Mr. Bastajian's

work in the field at artistic exhibitions or showcases:

   i)    A second, letter from Dr.  Abouali, the Director of

AANM, this one affirming "that Mr. Bastajian's art is

displayed in a manner consistent with,  and for the

purpose of, artistic exhibitions", ECF No. 5 at 30,

together with photographs of his work as displayed.

ECF No. 5 at 344.

c) The following evidence that Mr. Bastajian has performed in a leading or critical role for organizations or establishments that have a distinguished reputation.

i) A letter from the Former Chairman of the Executive Board of the Islamic Center of America, stating that "Haroutioun Bastajian played an unequivocally critical role in the design, execution and opening of the Islamic Center of America in Dearborn, MI" Further, he states that:

Haroutioun's responsibilities were abundant, yet specific. He led the execution of all artwork, calligraphy and patina in the hallways, prayer rooms, banquet halls, interior 33doors, walls, soffits, domes, mezzanine, etc., His leadership included teams of skilled artists, painters, calligraphers and volunteers. Upon completion of this work, we, the Board of Directors at the Islamic Center of America, presented to Haroutioun a distinguished honor for which he shared with only the 4 or 5 leading individuals who were responsible with the completion of our historic mosque. His plaque hangs in our hall of honor.

ECF No. 5 at 35.

COMPLAINT - 14

ii)    A letter from Farid Nasser, MD, Chairman,  Board of

Trustees, The Islamic Center of America  explaining

that:

Over the years, Washington  has recognized the Islamic
Center of America for its religious, educational and public
programs  and as a place of moderate  patriotic  views and
positive influence  on our society here and abroad.
Communications and relationship with the ICofA began
with  President Jimmy  Carter's Administration during the
hostage  crisis and continued with  most White House
Administrations thereafter every time issues and crises
erupt in the Middle East. The ICofA hosted US Senators,
US Presidents'  advisors and envoys as well as delegations
from the German Federal Parliament.

In the past and for a decade, the US State Department and
National  Defense University brought yearly over 70
officers delegates from all over the world to the Islamic
Center of America to marvel at the unique  architecture
and calligraphy  and to learn, dialogue and get their
questions answered. In addition, The ICofA hosts  weekly
delegates  from  schools, universities, and interfaith from
within and  outside  the  State  of Michigan, Canada and
the United Kingdom.

ECF No. 5 at 50

24.    On September 26, 2023, the USCIS issued a Decision

denying Mr. Bastajian's Form I-140. ECF No. 6.

25.    The basis for that decision was that "USCIS finds that you

did not receive a one-time  achievement (a major,

internationally recognized  award) or meet at least three of the 10 criteria." ECF No. 6 at 4.

26.   In fact, USCIS found that Mr. Bastajian did not meet any of the criteria. ECF No. 6 at 4-5.

27.   In particular, USCIS found that Mr. Bastajian did not meet the criterion at 8 C.F.R. § 204.5(h)(3)(iii) because although he "provided  a transcript of a brief television  interview  at MBC Studios  for the show  Talk of the Town, (and)  evidence  about the network, you did not provide  evidence  about the program regarding  viewership  and if the show was broadcast  locally, regionally,  nationally, or internationally." ECF No. 6 at 3.

28.   Further, USCIS found that Mr. Bastajian did not meet the criterion at 8 C.F.R. § 204.5(h)(3)(vii), because although he "submitted  letters of support  and pictures  claiming  that your work  is on display  at the  AANM. After a review  of the evidence,  we conclude  that your work (though  technical  and intricate) serves as decoration  for the museum  and not as a displayed  work of art.  As such,  we find that your work is not

displayed in a manner consistent with, and for the purpose of, "artistic exhibitions or showcases."

ECF No. 6 at 3.

29.   Finally, USCIS found that Mr. Bastajian's did not meet the criterion at 8 C.F.R. § 204.5(h)(3)(viii) because although he submitted certificates, contract information, etc. (and) letters of reference/experience from Dr. Nassib Fawaz (president of the Lebanese International Business Council), Ron Amen (former chairman at Islamic Center of America), Dr. Ghaus M. Malik (co-founder at Islamic Association of Greater Detroit), Dr. Walid Harb (Chairman at The Islamic Center of America), Dr. Hashim Al-Tawil (Professor at Henry Ford College), et al. who primarily describe your past works and accomplishments in the field of mosque decoration and your work with calligraphy, etc., but do not provide detailed and probative information that specifically addresses how your role was leading or critical for their organization.

ECF No. 6 at 4.

COMPLAINT - 17

30.    The USCIS further "noted" that:

> none of the letters are from previous employers  and
> therefore have no probative  value for these proceedings as
> all the claimed work appears to be contracted work.
> Contracted work is not evidence  of a leading or critical role
> for an organization  or establishment.  You were never an
> employee  of the claimed organizations or establishments,
> you played no role in their business decisions, and you are
> not a part of any distinguished reputation  that they may
> have.

*Id.*

31.    On July 11, 2022, Mr. HAROUTIOUN SAHAC BASTAJIAN,

CHRIS BASTAJIAN, ANGE BASTAJIAN, KARINA

BASTAJIAN, MARIA BASTAJIAN, ALINA NOVIKOVA

BASTAJIAN and GIO BASTAJIAN each filed a Form I-485,

Application to Register Permanent Residence or Adjust Status,

with USCIS. ECF No. 3 at 1.

32.    On October 30, 2023, USCIS denied all of these applications

on the grounds that Mr. Bastajian's Form I-140, upon which

they relied, had been denied. ECF No. 3.

**STATEMENT OF RELEVANT LAW**

33.    5 U.S.C. § 706 provides in relevant part that:

> To the extent necessary to decision and when presented, the
> reviewing court shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

34. Agency action is arbitrary and capricious if it informally imposes a requirement not previously made a part of its regulations, *Maximum Home Health Care, Inc. v. Shalala*, 272 F.3d 318, 319 (6th Cir. 2001); runs counter to the evidence before the agency, or fails to articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, (1983), quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

## CAUSE OF ACTION

I.   TO HOLD UNLAWFUL AND SET ASIDE THE DECISION DENYING MR. BASTAJIAN'S I-140

35.    Inasmuch as the USCIS's decision denying Mr. Bastajian's

Form I-140, and, in particular, its finding that he did not meet

three (3) of the criteria of 8 C.F.R. § 204.5(h)(3), ran directly

contrary to all relevant evidence in the record, informally

imposed a requirement not previously made a part of its

regulations, and/or failed to articulate a satisfactory

explanation for its action, including a rational connection

between the facts found and the choice made, it is arbitrary

and capricious, and should be held unlawful and set aside.

36.    Further, inasmuch as it was contrary to published agency

precedent, it was also not in accordance with law and so,

likewise, should be held unlawful and set aside.

37.    The USCIS's conclusion that Mr. Bastajian failed to meet

the criterion at 8 C.F.R. § 204.5(h)(3)(iii) was arbitrary and

capricious, inasmuch as although the Decision did not dispute

that the broadcast of his interview constituted published

material about Mr. Bastajian, nor that it appeared in the MBC

network, nor that the MBC network, with more than 130

COMPLAINT - 20

million viewers, constituted major media, nor that the

broadcast related to Mr. Bastajian's work as a mosque

decorator, nor that his evidence included the title, date and

author of the material and any necessary translation,

nevertheless, it held that Mr. Bastajian had not met this

criterion because "you did not provide  evidence  about the

program  regarding  viewership  and if the show was broadcast

locally,  regionally,  nationally, or internationally." ECF No. 6

at 3.

38.    8 C.F.R. § 204.5(h)(3)(iii) does not require that a petitioner

provide any evidence regarding the material published about

the him other than  (among other things), that it was in  major

media, it was relating to the petitioner's work in the field for

which classification is sought, and the title, date, and author of

the material, and any necessary translation.

39.    Accordingly, the USCIS informally imposed  requirements

not previously made a part of its regulations when it refused to

find a the criterion at § 204.5(h)(3)(iii) satisfied, even though

Mr. Bastajian provided all of the evidence required by the

regulation, merely because he did not provide additional

evidence not so required.

40.    Therefore, the USCIS's holding that Mr. Bastajian did not

satisfy the criterion at 8 C.F.R. § 204.5(h)(3)(iii), merely

because he did not provide evidence not previously made a part

of its regulations, was arbitrary and capricious.

41.    Further, the mere fact that Mr. Bastajian might have

submitted additional probative evidence in support of his

petition is not a basis for denial when the evidence submitted

satisfies the pertinent regulatory requirement. *See Matter of*

*Chawathe* , 25 I. & N. Dec. 369, 375 (B.I.A. October 20, 2010) (

"Although the applicant could have submitted more probative

evidence to establish that SAT is a subsidiary of

ChevronTexaco, such as direct evidence of the ownership of

SAT stock, the AAO finds that the SEC Form 10-K and the

letter written by his employer are sufficient to establish by a

preponderance of evidence that SAT is a wholly owned

subsidiary  of ChevronTexaco.").

42.   Therefore, the USCIS's holding that Mr. Bastajian did not satisfy the criterion at 8 C.F.R. § 204.5(h)(3)(iii), merely because he did not provide evidence not previously made a part of its regulations, was contrary to a published agency decision and so, not in accordance with law.

43.   The USCIS's conclusion that Mr. Bastajian failed to meet the criterion at 8 C.F.R. § 204.5(h)(3)(vii), was also arbitrary and capricious inasmuch as although the Decision did not dispute that Mr. Bastajian's work was displayed at the AANM, nor that this museum was in fact an artistic exhibition or showcase, it nevertheless held that his "work (though technical and intricate) serves as decoration for the museum and not as a displayed work of art.'" ECF No. 6 at 3.

44.   The record, however, contains a letter from Dr. Abouali, the Director of the AANM, affirming "that Mr. Bastajian's art is displayed in a manner consistent with, and for the purpose of, artistic exhibitions", ECF No. 5 at 30.

45.   The record contains no evidence that Mr. Bastajian's work serves as decoration for the museum and not as a displayed work of art.

46.   Accordingly, the USCIS's decision was, to the extent that it held that Mr. Bastajian did not satisfy the criterion at 8 C.F.R. § 204.5(h)(3)(vii) because his work was supposedly not displayed in a manner consistent with, and for the purpose of artistic exhibitions or showcases, runs counter to the evidence in the record, as well as fails to articulate a rational connection between the facts found and the choice made, and so is arbitrary and capricious.

47.   The USCIS concluded that Mr. Bastajian failed to meet the criterion at 8 C.F.R. § 204.5(h)(3)(viii) because the letters he provided from ICofA did "not provide detailed and probative information that specifically addresses how your role was leading or critical for their organization." ECF No. 6 at 4.

COMPLAINT - 24

48.     However, 8 C.F.R. § 204.5(h)(3)(iii) does not require that a

petitioner provide "detailed"[5] information that specifically

addresses how his role with critical for an organization with a

distinguished reputation.[6]

49.     Agency action is arbitrary and capricious if it informally

imposes  a  requirement not previously made a part of its

regulations, Maximum Home Health Care, Inc. v. Shalala, 272

F.3d 318, 319 (6th Cir. 2001).

---

[5] Section 204 of Title 8 of the Code of Federal Regulations contains numerous requirements for "detailed" information. E.g., §§ 204.5(m)(7)(vi) (a detailed description of the alien's proposed daily duties"); 204.6(m)(3)(iii) ("Provides a detailed  statement regarding the amount and source of capital which has been committed to the regional center"), and 204.6(m)(3)(iv) ("Contains a detailed  prediction regarding the manner in which the regional center will have a positive impact on the regional or national economy"). "Where Congress includes particular language in one section of a statute but omits it from another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Statutory canons of construction apply also to regulations. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). Accordingly, it should be presumed that Congress acted intentionally in omitting from § 204.5(h)(3)(viii) the requirement that the petitioner provide *detailed* evidence of the beneficiary's performance of a leading or critical role for an organization with a distinguished reputation.

[6] The Decision does not dispute that ICofA is an organization with a distinguished reputation.

COMPLAINT - 25

50.   Therefore, this conclusion was arbitrary and capricious inasmuch as it informally imposed a requirement not previously made a part of USCIS's regulations.

51.   Further, the record shows that Mr. Bastajian's information regarding the critical role he played for ICofA was in fact detailed.

52.   Where a law requires that "operators of oil or gas wells within a drilling unit 'shall issue' to owners of land in the unit 'a sworn, detailed, [and] itemized statement . . . contain[ing] the costs of drilling, completing, and equipping the unit well.', Brannon Props., LLC v. Chesapeake Operating, Inc., 514 F. App'x 459, 459 (5th Cir. 2013) (emphasis in the original), the "'detailed' requirement'" means that "'the report has to relate the cost to the benefit: it must tell the unleased mineral owner what it is getting for its money.'"). B. A. Kelly Land Co., LLC v. Aethon Energy Operating, LLC, 25 F.4th 369, 376 (5th Cir. 2022), quoting Brannon Props, 514 F. App'x at 461.

53.   Accordingly, here, even if the regulation required that the petitioner provide "detailed" information establishing the

critical role he played in an organization of distinguished

reputation, this simply means that the information  must

relate to the petitioner's role in the organization and it  must

tell the agency how he was critical to that  organization.

54.    ICofA's letter of December 11, 2021, explains in detail that,

after completing its new and expanded mosque, which was the

largest Shia mosque in North America,

> the mosque, particularly its dome, was largely bare.
> Inscriptions from the Qur'an  usually  adorn  the interiors
> and  exteriors  of mosques,  establishing a strong  link
> between  scripture  and  the place of prayer.  …. However,
> given  the large expense  of the building of the mosque,  it
> seemed  like the heavy  (and often quite expensive)  task of
> decoration would  have to be delayed  indefinitely.
> This is why the ICofA  leadership was (pleasantly)  surprised
> and amazed when  Harout  Bastajian, already widely
> recognized  as one of the leading practitioners of religious
> decorative art in  the Islamic  World,  volunteered  to
> decorate the ICofA's mosque without  compensation.  This
> great undertaking, spanning several months, turned our
> new Mosque  from  a mere  piece of architecture into a living
> breathing monument to God.  Religious  worshipers  and
> visitors from all over the world, when they come to the
> Islamic Center, are able to gain inspiration  from the verses
> of the Qu 'ran and elaborate religious decoration  which
> burst upon  them  from all directions.
>
> Harout Bastajian certainly has played a critical role for the
> ICofA  because  without him it might have taken years to

raise the funds to decorate  the mosque, and even  had the funds  been raised, there were few  in the world - and none in North America -who could have done at any price the amazing job which he did out of the goodness of his heart.

ECF No. 4 at 25.

55.   Thus, the information contained in this ICofA letter does explain how Mr. Bastajian's role for its organization was critical since he transformed a "largely bare" mosque into "a living breathing monument to God" and that "Religious worshipper and visitors from all over the world, when they come to the Islamic Center, are able to gain inspiration  from the verses  of the Qu 'ran and elaborate religious decoration which burst upon  them  from all directions." Id.

56.   Finally, the letter affirmed that "Harout Bastajian certainly has played a critical role for the ICofA  because  without him it might have taken years to raise the funds to decorate  the mosque, and even  had the funds  been raised, there were few in the world - and none  in North America -who could have done at any price the amazing job which he did out of the goodness of his heart." Id.

57.     Accordingly, the letter from ICofA of December 21, 2021, did in fact  contain detailed information regarding the critical role of Mr. Bastajian in that it explained exactly what he did and why it was critical for the organization.

58.      Further, "'Probative' … means 'tending to prove or disprove.; Black's Law Dictionary 1240 (8th ed. 2004)" United States v. Carranza, 571 F. App'x 372, 376 (6th Cir. 2014).

59.     Both of ICofA's letters tended to prove Mr. Bastajian played a critical role for ICofA, and so were probative.

60.     Inasmuch as the record contains extensive evidence that Mr. Bastajian provided information regarding his critical role for ICofA that  was both detailed and probative, and there is none to the contrary, the Decision's conclusion that this information was not detailed nor probative ran counter to the evidence in the record.

61.     Furthermore, the Decision failed to articulate any rational connection between the facts found and its conclusion that the information provided was not detailed or probative.

COMPLAINT - 29

62.   Finally, inasmuch as the regulations contain no requirement that the "critical role" played for the organization be as an employee, and in fact the USCIS's own Policy Manual advises that "The organization need not have directly employed the beneficiary" for him to have played a critical role,  Policy Manual Volume 2 - Nonimmigrants Part M - Nonimmigrants of Extraordinary Ability or Achievement (O) Chapter 4 - O-1 Beneficiaries, Appendix: Satisfying the O-1B7 Evidentiary Requirements § 3 https://www.uscis.gov/policy-manual/volume-2-part-m-chapter-4 (last accessed 11/5/2023),  therefore the Decision's holding that "Contracted work is not evidence  of a leading or critical role for an organization  or establishment." informally imposes  a  requirement not previously made a part of USCIS's regulations (or even policy).

---

[7] The requirement pertaining to "critical role" in the regulations for O-1B petitions is virtually identical to that pertaining to those regarding extraordinary ability. *Cf.* 8 C.F.R. § 214.2(o)(3)(v)(B)(3) with § 204.5(h)(3)(viii). "A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning." Scalia, Antonin; Garner, Bryan A.. Scalia and Garner's Reading Law: The Interpretation of Legal Texts (p. 145). Thomson West. Kindle Edition.

COMPLAINT - 30

63.    Accordingly, the Decision's finding that Mr. Bastajian failed to satisfy the criteria of 8 C.F.R. §§ 204.5 (h)(3)(iii), (vii) and (viii) were each arbitrary and capricious as was its conclusion that he  did not meet three of the ten criteria contained in § 204.5(h)(3).

WHEREFORE this Court should hold unlawful and set aside the USCIS's  Decision denying Mr. Bastajian's Form I-140 as arbitrary and capricious.

II.    TO HOLD UNLAWFUL AND SET ASIDE THE DECISION DENYING MR. BASTAJIAN AND FAMILY'S FORMS I-485.

64.    The USCIS's Decisions denying Mr. Bastajian and his family's Forms I-485 was premised solely upon the denial of Mr. Bastajian's Form I-140, and so are also arbitrary and capricious.

WHEREFORE  USCIS's Decisions denying Mr. Bastajian and his family's Forms I-485 should also be held unlawful and set aside.

III.    TO COMPEL THE USCIS TO  RE-ADJUDICATE MR. BASTAJIAN'S FORM I-140 AS WELL AS HIS AND HIS FAMILY'S FORMS I-485 FORTHWITH

65.    The USCIS, by unlawfully denying Mr. Bastajian's petition, as well as his and his family's Forms I-485, has unreasonably delayed and/or unlawfully withheld a lawful decision in this matter.

WHEREFORE the Court should compel the USCIS to make a lawful decision on HAROUTIOUN BASTAJIAN'S Form I-140 and ALINA NOVIKOVA BASTAJIAN, CHRIS BASTAJIAN, ANGE BASTAJIAN, KARINA BASTAJIAN, MARIA BASTAJIAN and GIO BASTAJIAN's Forms I-485.

Respectfully Submitted this 24th day of November, 2023

/s/ *Michael E. Piston*
Michael E. Piston
Attorney for the Plaintiff
38-08 Union St., Suite 9A
Flushing, NY 11354
Phone: 646-876-3772
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

COMPLAINT - 32