UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AF, INC., et al.,

       Plaintiffs,

v.

U.S. CITIZENSHIP AND
IMMIGRATION
SERVICES,

       Defendant.

Case No. 23-cv-13009

Honorable Robert J. White

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITHOUT PREJUDICE

This case involves Plaintiffs' request to overturn decisions of Defendant U.S. Citizenship and Immigration Services (USCIS).  Specifically, Plaintiffs challenge as arbitrary and capricious USCIS's decisions to deny (1) non-citizen Plaintiff Haroutioun Sahac Bastajian's (Haroutioun's) application for employment authorization and (2) his and his family's (the remaining Bastajian plaintiffs') related applications for adjustment of immigration status. (ECF No. 6, PageID.96-97, 113-127).  Before the Court is USCIS's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6). (ECF No. 13).  The Parties fully briefed the motion and the

Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2).  For the following reasons, the Court grants the motion.

## I.      Background

On April 18, 2022, Haroutioun, who "intend[s] to work as a skilled technical artist in the field of mosque decoration," filed Form I-140 to apply for an immigrant employment visa with USCIS. (ECF No. 6, PageID.100; ECF No. 2, PageID.33). He sought this visa as "an alien with extraordinary ability" under Section 203(b)(1)(A) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1153(b)(1)(A). (ECF No. 6, PageID.110-113; ECF No. 2, PageID.35-36).  The entire Bastajian family also filed Form I-485 applications for adjustment of immigration status on July 11, 2022. (ECF No. 6, PageID.113; ECF No. 3, PageID.38). Haroutioun and his family are all citizens and nationals of Lebanon, except for one child who is a citizen and national of Russia. (ECF No. 6, PageID.98).

Plaintiffs assert that Haroutioun is "one of the leading decorators of mosques in Lebanon, . . . as well as one of the leading professionals of a field unique to the Islamic World—the use of Arabic calligraphy to decorate religious buildings." (ECF No. 6, PageID.98).  Haroutioun submitted various evidence to USCIS purportedly establishing himself as an alien with extraordinary ability in the field of mosque decoration. (ECF No. 6, PageID.102-110; *see generally* ECF No. 4).  Furthermore, as particularly relevant here, Plaintiffs allege that Plaintiff AF, Inc. (AF) is a

company in Dearborn, Michigan that "has been, and intends to be, when Haroutioun Bastajian becomes a permanent resident, his employer in the United States, and on that basis has entered into large scale agreements to provide [Haroutioun]'s services to at least two mosques, which it cannot complete if [Haroutioun] is not granted U.S. permanent residency." (ECF No. 6, PageID.97-98).

On September 26, 2023, USCIS denied Haroutioun's Form I-140 employment visa application. (ECF No. 6, PageID.110; ECF No. 2, PageID.33, 36).   USCIS specifically determined that Haroutioun did not qualify as an alien with extraordinary ability under the INA. (ECF No. 6, PageID.110-113; ECF No. 2, PageID.35-36).   Because of the initial denial of Haroutioun's employment visa application, USCIS also denied the family's Form I-485 applications for adjustment of immigration status. (ECF No. 6; PageID.113; ECF No. 3, PageID.38-39).

Plaintiffs filed their complaint on November 28, 2023. (ECF No. 1).   They filed an amended complaint on December 1, 2023. (ECF No. 6).   Plaintiffs seek judicial review of USCIS's decisions under the Administrative Procedures Act (APA). (ECF No. 6, PageID.113-14).   On May 6, 2024, USCIS moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), (3) (improper venue), and (6) (failure to state a claim).  (ECF No. 13, PageID.140, 149).

## II.   Legal Standards

Dismissal is appropriate under Rule 12(b)(1) where the court lacks subject matter jurisdiction over a plaintiff's claim. Fed. R. Civ. P. 12(b)(1).  USCIS raises issues of mootness and standing (*see* ECF No. 13, PageID.149, 153-156), which both implicate a court's subject matter jurisdiction, *see Stewart v. Manchester Cmty. Sch.*, 629 F. Supp. 3d 715, 719 (E.D. Mich. 2022); *Forest City Residential Mgmt., Inc. v. Beasley*, 71 F. Supp. 3d 715, 722-23 (E.D. Mich. 2014) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)).

> A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack).  A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis.

> A factual attack challenges the factual existence of subject matter jurisdiction.  In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case.  Plaintiff bears the burden of establishing that subject matter jurisdiction exists.

*Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (citations omitted).

The Court interprets USCIS's standing argument as a facial challenge to subject matter jurisdiction.  In contrast, USCIS's mootness argument relies on evidence outside the pleadings, so it will be addressed as a factual challenge.

Concerning venue, Rule 12(b)(3) authorizes dismissal "only when venue is 'wrong' or 'improper' in the forum in which [suit] was brought." *Atl. Marine Constr.*

*Co. v. United States Dist. Court*, 571 U.S. 49, 55 (2013).  "On a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper." *Audi AG v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002).  "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id.*  "If a defendant prevails on a Rule 12(b)(3) challenge, the Court has the discretion to decide whether the action should be dismissed or transferred to an appropriate court." *Id.* (citing 28 U.S.C. § 1406).

Lastly, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d

523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

## III.   Analysis

### A.   Governing Immigration Law and the I-140 Denial

Haroutioun applied for an immigrant employment visa pursuant to 8 U.S.C. § 1153(b)(1)(A) as an "alien with extraordinary ability."  This subsection of the INA applies to individuals if:

> (i) the alien has extraordinary ability in the sciences, arts, education, businesses, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A)(i)-(iii).

To secure an employment visa, applicants must file Form I-140. 8 C.F.R § 204.5(a).  Title 8 C.F.R. § 204.5(h) specifies the administrative procedure that must be followed to apply for an employment visa as an alien with extraordinary ability. Under this section, "extraordinary ability" is defined as "a level of expertise indicating the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).  An applicant's petition must

include either (1) evidence of a one-time achievement, such as a major, internationally recognized award, or (2) *at least three* of the following:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. . . . ;

> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied filed of specification for which classification is sought;

> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

      (x) Evidence of commercial success in the performing arts, as shown by box office receipts, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3).

Only if an applicant satisfies this initial burden will USCIS then evaluate "the totality of the evidence" to determine whether the applicant has attained "both a 'level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor,' 8 C.F.R. § 204.5(h)(2), and 'that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise.' 8 C.F.R. § 204.5(h)(3)." *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1119-20 (9th Cir. 2010).  "Only aliens whose achievements have garnered 'sustained national or international acclaim' are eligible for an 'extraordinary ability' visa." *Id.* at 1120.  If an applicant is approved for an I-140 employment visa, Form I-485 provides the mechanism for the non-citizen worker to become a lawful permanent resident. *See* 8 C.F.R. § 245.2; 8 U.S.C. § 1255.

When adjudicating an I-140 application, USCIS is bound by the *Matter of Chawathe*, which states that an applicant must only prove "by a preponderance of the evidence that he or she is eligible for the benefit sought." *Matter of Chawathe*, Interim Decision #3700, 25 I&N Dec. 369, 369 (2010).  Likewise, "even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is 'more likely

than not' or 'probably' true, the applicant has satisfied the standard of proof." *Id.* at 376 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)).

Here, USCIS denied Haroutioun's Form I-140 employment visa application after it determined that he did not qualify as an alien with extraordinary ability. (ECF No. 6, PageID.110-113; ECF No. 2, PageID.35-36). USCIS declined to conduct a final merits determination on Haroutioun's level of expertise because he failed to meet the preliminary evidentiary burden under 8 C.F.R. § 204.5(h)(3). (ECF No. 6, PageID.110-113; ECF No. 2, PageID.35-36).

USCIS specifically found that (1) Haroutioun's submitted news articles related to his work lacked "evidence that these publications are considered professional or major trade publications or other major media"; (2) Haroutioun's submitted television interview transcript lacked "evidence about the program regarding viewership and if the show was broadcast locally, regionally, nationally, or internationally"; (3) Haroutioun's submitted pictures of his work and supporting letters showed that "[the] work (though technical and intricate) serves as decoration for [a] museum and [is] not displayed as a work of art"; and (4) Haroutioun's submitted certificates, contract information, letters of reference, and other documentation purporting to establish his leading or critical role for organizations with a distinguished reputation "do not provide detailed and probative information that specifically addresses how your role was leading or critical . . . ." (ECF No. 6,

PageID.110-113; ECF No. 2, PageID.35-36).  On this fourth point, USCIS noted that the letters had no probative value because they were not from previous employers and related only to contracted work, thus showing that Haroutioun (1) was not personally involved in the organizations' business decisions and (2) did not contribute to the organizations' reputations. (ECF No. 6, PageID.113; ECF No. 2, PageID.36).

### B.    Jurisdiction

USCIS argues that jurisdiction is lacking because (1) the case is moot and (2) AF lacks standing to challenge the application denials. (ECF No. 13, PageID.149, 153-156).

### i.  Mootness

"Mootness doctrine arises from the Article III requirement that courts may only consider a live controversy." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014).  "The Government, as the party seeking mootness, bears a heavy burden to demonstrate that it applies here." *Id.* at 732-33.  "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* at 733 (cleaned up).  A plaintiff has a cognizable interest that defeats mootness if they "suffered, or [are] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  "Mootness results when events occur during

the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir.1986); *King v. McAleenan*, No. 19-13454, 2020 U.S. Dist. LEXIS 108519, at *4 (E.D. Mich. Jun. 22, 2020).

However, "a defendant's voluntary cessation of a challenged practice moots a case only in the rare instance where subsequent events make it absolutely clear that [1] the allegedly wrongful behavior cannot reasonably be expected to recur and [2] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (cleaned up). While defendants generally bear a heavy burden to demonstrate mootness in the context of voluntary cessation, "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." *Id.* "Essentially, a court should determine whether the defendant is attempting to manipulate the court's jurisdiction by looking at the motive for the cessation and if there is any reasonable expectation that the challenged conduct will recur." *Vision IT Servs. v. Mayorkas*, No. 11-11170, 2011 U.S. Dist. LEXIS 115425, at *9 (E.D. Mich. Oct. 6, 2011) (citing *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003)).

USCIS argues that the case is moot because it *sua sponte* reopened the applications at issue. (ECF No. 13, PageID.149, 153-156). USCIS attaches to its motion documents confirming that in March and February 2024 it reopened

Haroutioun's Form I-140 and the family's Form I-1485 applications and requested further evidence by June 17, 2024. (ECF Nos. 13-2, 13-3, and 13-4).

Plaintiffs counter that the case is not moot because (1) USCIS voluntarily ceased its alleged illegal conduct and (2) USCIS has not established that the illegal conduct—its arbitrary and capricious denials—will not reoccur, or that the reopening completely and irrevocably eradicated the effects of the denials. (ECF No. 14, PageID.191-194).  According to Plaintiffs, the reopening has not completely and irrevocably eradicated the effects of the denials because, at a minimum, they still incurred substantial legal fees and their applications were unlawfully delayed. (ECF No. 193-94).

Plaintiffs argue further that USCIS "has failed to carry its heavy burden of demonstrating that the alleged violation will not reoccur" because "[t]here is certainly nothing prohibiting the USCIS from simply denying [Haroutioun]'s petition on the very same arbitrary grounds upon which it rested its prior decision." (ECF No. 14, PageID.193).  Plaintiffs also assert that USCIS's request for evidence after reopening the applications "leaves no doubt of its intention to deny [Haroutioun]'s petition on the same grounds complained of here." (ECF No. 14, PageID.196).

In reply, USCIS contends that Plaintiffs' argument is misguided (ECF No. 16, PageID.201-203).  Specifically, it asserts that the case is moot where the denials at

issue are no longer effective and any decision by the Court would be advisory, and that the voluntary cessation doctrine simply does not apply with no final agency action to review. (ECF No. 16, PageID.202-203).

> There is no "final" agency action here because USCIS reopened [Haroutioun]'s Form I-140 petition and the Bastajians' I-485 applications and issued a new, comprehensive request for evidence for [Haroutioun]'s Form I-140 petition. [Haroutioun] now can respond and submit evidence to support his petition, which the Agency will evaluate and then issue a new decision. Regardless of the outcome, the prior denial decision that Plaintiffs' complaint challenges no longer controls. Plaintiffs thus have no basis to claim that the prior denial decision will continue to harm them in a way that the voluntary cessation doctrine could apply.

(ECF No. 16, PageID.202-203 (citations omitted)).

Here, USCIS voluntarily ceased its alleged illegal conduct by *sua sponte* reopening the applications at issue. The Court concludes that USCIS has not demonstrated that it is absolutely clear this is the rare case where the allegedly wrongful behavior cannot reasonably be expected to recur.

Notably, the applications at issue in this case remain pending. *Conta Vision IT Servs.*, 2022 US Dist. LEXIS 115425 at *9-10 (concluding that there was no reasonable expectation of recurrence because USCIS reopened *and granted* the applicant's Form I-140 three months after the plaintiff filed suit). In reopening the applications, USCIS's request for evidence outlines essentially the same alleged evidentiary defects that justified its initial denial of Haroutioun's I-140 application. (*See* ECF No. 2, PageID.35-36; ECF No. 13-4, PageID.170-77).

USCIS makes no effort to explain how the alleged wrong is unlikely to reoccur, nor does it explain why it reopened the Bastajian Plaintiffs' applications. And its request for evidence indicates a belief that its basis of the initial I-140 denial was lawful and proper. It is therefore entirely possible that USCIS could still deny the reopened applications for reasons that are, in Plaintiffs' view, arbitrary, capricious, and unlawful. *See Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307-08 (2012) (denying union's mootness argument under the voluntary cessation doctrine in part because "the union continues to defend the legality of [its challenged fee]" and "it is not clear why the union would necessarily refrain from collecting similar fees in the future"); *Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 440-41 (6th Cir. 2022) (denying government's mootness argument under the voluntary cessation doctrine because USCIS's new I-918 processing procedure could be unilaterally rescinded before adjudication of the plaintiffs' petitions, thus allowing their claim that USCIS unlawfully failed to institute such procedure to reoccur).

Accordingly, the Court finds that this case is not moot. To conclude otherwise under the instant facts would permit USCIS to evade judicial review of the conduct Plaintiffs challenge as unlawful. Indeed, if the case is deemed moot with no apparent reason given for the applications being reopened, USCIS could theoretically issue a

materially identical denial and use this strategy again to evade the Court's jurisdiction in perpetuity.

### ii.  AF's Standing

"To establish standing under Article III, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Sullivan*, 920 F.3d at 407 (cleaned up).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up).

USCIS asks that AF be dismissed from the case because Haroutioun's employment visa application was not sponsored by AF, and Plaintiffs never alleged any concrete injury AF suffered from USCIS's denials (ECF No. 13, PageID.155-156).  In response, Plaintiffs argue that AF has standing in this case because it is an indirect party that will suffer a loss of revenue if Haroutioun does not receive an employment visa. (ECF No. 14, PageID.194-196).  In reply, USCIS asserts that Plaintiffs' "barebones allegations of future harm" to AF were speculative and failed to establish any injury in fact to this party. (ECF No. 16, PageID.203-205).

Accepting Plaintiffs' allegations as true, AF "has been, and intends to be, when Haroutioun Bastajian becomes a permanent resident, his employer in the

United States, and on that basis has entered into large scale agreements to provide [Haroutioun]'s services to at least two mosques, which it cannot complete if [Haroutioun] is not granted U.S. permanent residency." (ECF No. 6, PageID.97-98). Plaintiffs ask the Court to take judicial notice of the generally-known fact "that if one does not perform under a contract[,] one does not derive revenue from it." (ECF No. 14, PageID.194).

As an initial matter, "[m]onetary loss is a concrete injury." *Patterson v. United Healthcare Ins. Co.*, 76 F.4th 487, 493 (6th Cir. 2023). And assuming that Plaintiffs sufficiently pled a concrete monetary loss by AF, the alleged injury is particularized because it affects AF "in a personal and individual way." *Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343, 351 (6th Cir. 2024). The alleged injury is also sufficiently traceable to the complained-of harm because Plaintiffs allege that AF cannot complete contracted projects *because of* USCIS's refusal to grant Haroutioun's visa application. And the alleged injury is both imminent and likely to be addressed by a favorable decision.

Although USCIS argues that the alleged injury cannot be redressed when USCIS already reopened the applications at issue, this argument fails for similar reasons as explained with respect to its mootness argument. Specifically, a favorable decision would preclude the possibility that USCIS could deny the reopened applications for any arbitrary, capricious, and unlawful reasons.

Insofar as USCIS argues that standing is lacking because AF did not sponsor Haroutioun's visa application, this is somewhat of a red herring. First, USCIS cites no authority for this position. More importantly, the APA confers standing on *anyone* "suffering legal wrong because of an agency action," as well as those "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. But AF's non-involvement in Haroutioun's initial application does generally cut against the idea that AF has any substantial interest in this case. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 542 (2020) ("Because the plaintiffs themselves have no concrete stake in the lawsuit, they lack Article III standing.").

In any event, Plaintiffs' complaint merely alleges that AF cannot *complete* certain contracts, without any assertion of a concrete monetary loss. *Contra Jet Courier Servs., Inc. v. Fed. Rsrv. Bank*, 713 F. 2d 1221, 1226 (6th Cir. 1983) (plaintiffs established standing where they supplied customer affidavits showing they would "suffer economic loss flowing from" the defendants' conduct). Regarding Plaintiffs' request for judicial notice, courts may judicially notice a fact "that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction." Fed R. Evid. 201. Although Plaintiffs seemingly want the Court to conclude under this doctrine that it necessarily suffered or will suffer monetary loss if unable to complete the contracts at issue, doing so would require various assumptions that the Court will not make.

Lacking any contrary information on the contracts AF allegedly cannot complete, it is entirely possible there could be liquidated damage or other similar provisions that would nullify any loss arising from noncompletion. Plaintiffs also do not address why the contracts could not be completed without Haroutioun, nor what loss, if any, AF would incur in the event the visa application is not approved (for example, whether AF would incur some loss by having to replace Haroutioun's services). The alleged injury to AF is therefore too theoretical to constitute an injury in fact. For these reasons, AF does not have standing in this action.

### C.   Venue

In actions against U.S. agencies, venue is generally proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e). Since no real property is involved in this case, venue is proper in a district where plaintiffs reside, if any; where a substantial part of the events underlying this action occurred; or where USCIS resides.

For venue purposes, the residence of a federal agency is the place where the entity performs its official duties. *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978). Although officers and agencies of the United States can

have more than one residence, *Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C. 1993) (noting that an officer or agency head may perform a "significant amount" of their official duties in multiple districts), the mere fact that an agency maintains a regional office in another judicial district does not render it a resident of that district for venue purposes. *F.T.C.*, 580 F.2d at 267; *Brahim v. Holder*, No. 13-23275, 2014 U.S. Dist. LEXIS 87219, at *2 (S.D. Fla. June 26, 2014).

"When venue is challenged, the court must determine whether the case falls within one of the . . . categories set out in §1391[].  If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §1406(a)." *Atl. Marine Constr. Co.*, 571 U.S. at 56; *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

USCIS argues that without AF as a plaintiff, venue is improper because USCIS resides outside this district, the underlying events occurred outside this district, and the Bastajian plaintiffs do not alleged that they reside in this district. (ECF No. 13, PageID.149, 153, 156-158).  USCIS alternatively requests that the case be transferred to Nebraska (where Haroutioun's I-140 application was adjudicated) or Kansas (where the Bastajian family's I-485 applications were adjudicated). (ECF No. 13, PageID.158-162).  Plaintiffs respond that venue is proper in this district

because AF resides therein. (ECF No. 14, PageID.194-196; *see also* ECF No. 6, PageID.99).  In reply, USCIS asserts that venue is improper absent AF as a plaintiff, and that even if proper, a venue transfer is warranted. (ECF No. 16, PageID.205-206).

Having concluded that AF—the only party with a connection to Michigan in this case—lacks standing, USCIS is correct that venue is improper in this district. No other plaintiff resides in Michigan, nor does USCIS for the purposes of this case. The proper venue for this case is therefore either (1) where USCIS resides, i.e., performs a significant amount of its duties—presumably in the District of Columbia area where its headquarters is located; or (2) where a substantial part of the events or omissions giving rise to the claim occurred—in either Nebraska or Kansas where the applications at issue were adjudicated.  Because venue is improper in this district, the Court dismisses Plaintiffs' amended complaint without prejudice.

Although the Court has discretion under 28 U.S.C. § 1406(a) to transfer the case to a proper case "if it be in the interest of justice," dismissal is more appropriate here.  First, it is unclear to the Court which single district would be most appropriate for transfer where USCIS's argument identifies two options without any preference or argument for one over the other.  And USCIS denied Haroutioun's Form I-140 application on September 26, 2023 (ECF No. 6, PageID.110; ECF No. 2, PageID.33, 36), so the Basmajian Plaintiffs have until September 2029 to refile this case in a

proper venue, *see* 28 § U.S.C. 2401(a) (six-year statute of limitations for claims against the federal government); *Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 603 U.S. 799, 804 (2024) (APA claims accrue "when the plaintiff is injured by final agency action"). For these reasons, dismissal without prejudice is more appropriate than transfer in this case. *Contra Lee v. France*, No. 14-11057, 2014 U.S. Dist. LEXIS 62299, at *8 (E.D. Mich. May 6, 2024) (the interest of justice favored transfer because (1) the plaintiff "[q]uite clearly" "could have originally brought this action in the Western District of Michigan" and (2) outright dismissal "could prevent th[e claims] from being adjudicated on the merits").

Lastly, because venue is improper in this district, the Court also declines to rule on the merits of USCIS's 12(b)(6) argument. *See Robinson v. Serra Chevrolet Buick GMC of Nashville*, No. 21-10684, 2021 U.S. Dist. LEXIS 162055, at *9 (E.D. Mich. Aug. 26, 2021) ("Because venue is improper in this District, the Court refrains from deciding [the] Motion to Compel Arbitration."); *United States ex rel. Donohue v. Carranza*, 585 F. Supp. 3d 383, 390 (S.D.N.Y. 2022) ("Since venue does not lie in this District with respect to the claims against the Loudoun Defendants, the Court declines the Loudon Defendants' invitation to address Plaintiff's claims against them on the merits.").

* * *

For the reasons given, the Court ORDERS that Defendant's motion to dismiss (ECF No. 13) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's amended complaint (ECF No. 6) is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to close this case.

Dated: January 27, 2025                  s/Robert J. White_____
                                         Robert J. White
                                         United States District Judge